**BOICE v. BOICE et al,**
Civ. No. 2100.

District Court, D. New Jersey.
Jan. 5, 1943.

184

Lum, Fairlie & Wachenfeld, by Ralph E. Lum, all of Newark, N. J., for plaintiff.

Milton M. Unger, of Newark N. J., for defendants Edith Gibby Boice and Alfred A. Stein, Jr., as sequestrator.

Foley & Francis, by John J. Francis, all of Newark, N. J., for defendants First National Bank of Palm Beach and Florida Bank & Trust Co.

FAKE, District Judge.

A bill of interpleader was filed by the plaintiff in this cause on March 30, 1942, and an injunction followed restraining the defendants from the further prosecution of certain suits then pending in the courts of Florida and in the Court of Chancery of this State and prohibiting the institution of further suits. Divers motions to strike the complaint and dissolve the injunction have been made and the issues now to be settled arise on these motions.

The complaint sets forth, among other things, that on July 3, 1940, by a certain declaration of trust, plaintiff became the trustee of certain scheduled personal property therein settled upon him by his brother Nelson. Plaintiff, as such trustee, to pay over the net income and profits thereof to Nelson on a monthly basis and also to pay over to him such sums in addition thereto

as plaintiff, in his sole discretion, might determine to be necessary for the comfortable maintenance and support of Nelson and "of such persons as may be properly dependent upon him for support." In the event of the death of Nelson, the estate to pass to his children as in the declaration of trust provided. After providing for a partial termination of the declaration of trust in the event of Nelson's death, it is further expressly provided that: "It may also be terminated upon the settlors voluntary revocation and termination * * * in writing * * * delivered to the trustee" allowing thirty days after such written notice within which the trustee is to account to the settlor, and "provided further that said trustee deems the revocation to be to the best interests of the settlor and gives his consent thereto". In short, the trust could not be terminated without the joint consent of the settlor and the trustee.

The complaint alleges that on September 22, 1940, the trust was terminated at the request of Nelson and plaintiff forwarded to Nelson all the certificates of stock mentioned in the schedule, receiving a receipt therefor dated October 2, 1940. All of the certificates mentioned were registered in plaintiff's name save 65 shares of Central Jersey Land Company which were in the name of Nelson.

It is alleged that sometime after plaintiff sent the certificates of stock mentioned in the trust agreement to Nelson in Florida, which, by the way, were sent without plaintiff's endorsements thereon, they were found to be placed as follows:

25 shares of Nash-Kelvinator, registered in plaintiff's name, still remained in Nelson's possession, 25 shares of National Dairy Co. sent without plaintiff's endorsement were held by one Arthur Schohinard as collateral for a loan of $150.00, and Nelson may have endorsed plaintiff's name on the certificate. All the remaining shares save 65 shares of Central Jersey Land Company registered in plaintiff's name were endorsed in plaintiff's name by Nelson and were held in part by the defendant The First National Bank of Palm Beach and the remainder by the Florida Bank and Trust Company as collateral security for loans made to Nelson upon the misrepresentation, made by Nelson, that the banks were dealing with the plaintiff. These loans aggregate $3,600. The 65 shares of Central Jersey Land Company were located by plaintiff in the possession of another

member of the family and are now in plaintiff's possession. The cash which plaintiff now deposits here represents dividends paid to plaintiff, after sending the stock to Nelson, amounting to $642.07, from which plaintiff's expenses to Florida amounting to $129.73 were deducted, leaving $512.34.

Prior to the date of the trust agreement of July 3, 1940, the defendant, Edith Boice, wife of Nelson, had claimed an interest in her husband's property and had sought possession thereof as security for her husband's obligation to support her and their children, but on the date of the trust agreement the husband and wife entered into an agreement composing all controversies between them and plaintiff was released from a previous trust agreement, the language and provisions of which are not now before the court.

Thereafter Nelson and his wife, Edith, returned to Florida where he had previously resided, and there they resumed marital relations. On November 3, 1940, however, Nelson sued Edith in Florida for a divorce, and on November 19, 1940, Edith, having returned to New Jersey, instituted proceedings in the New Jersey Court of Chancery against Nelson, joining plaintiff as a defendant therein as trustee under the previous trust agreement, disaffirming her release thereof on the ground of fraud committed by Nelson, and sought possession of Nelson's property by sequestration. It should be noted at this point that plaintiff had, as above stated, already returned most of the trust property to Nelson in Florida pursuant to the provisions of the trust. Plaintiff appeared in Edith's New Jersey Chancery suit and moved for dismissal as a party defendant. This motion was denied pending final hearing and orders were entered directing plaintiff to make payments to a sequestrator out of any property of Nelson's. It is noted that no service of process was made or notice given to Nelson in New Jersey nor did he appear personally in the cause. But it appears in Boice v. Boice, 131 N.J.Eq. 41, 22 A.2d 1, that he was retained as a defendant because of his appearance in a prior suit which was opened.

On December 7, 1940, Nelson abandoned the suit for divorce which he had instituted in Florida on November 3, 1940, and instituted there a new or second suit for divorce.

During the pendency of Edith's suit in the New Jersey Court of Chancery and with the approval of that Court, plaintiff went to Florida in February of 1942 for the avowed purpose of inducing Nelson to return with his property to New Jersey with the view of expediting a settlement or an adjudication in the New Jersey Court. Nelson refused to return or permit his property to be returned to New Jersey. Plaintiff's mission was therefore a failure. Shortly after plaintiff's arrival in Florida he was taken by Nelson on February 23, 1942, to a law office there and served with papers in Nelson's latest Florida divorce suit, in which suit plaintiff was made a party defendant and restrained by order of the Florida Court from disposing of the trust estate until the further order of that court. Thus we find plaintiff restrained from action both by the Florida Court and the New Jersey Court and each of these courts free to proceed against him regardless of the other. After having been so immobilized, the New Jersey Court of Chancery proceeded in Edith's suit to find, on March 25, 1942, that our plaintiff was guilty of "a cunning and calculated effort to avoid compliance with the decree" of that court. Pointing out that our plaintiff "mailed to his brother Nelson certain certificates of stock, but failed to endorse same over so that he at all times retained legal title thereto and still is the owner thereof on the books of the several companies with whose securities we are now concerned. The certificates themselves, without proper endorsement, carried no transfer of ownership". Having his rights thus defined, the Chancery Court in its opinion said: "He will be required to transfer legal title to said securities to our sequestrator forthwith and will be restrained from disposing of them otherwise. Submit an order in accordance herewith".

Being thus securely hog-tied and weighted down with a burden of grief, or more correctly stated, worried, restrained, enjoined, and about to be ordered by the New Jersey Court to ignore the Florida injunction, he humbly seeks sanctuary by way of interpleader in this peaceful jurisdiction; deposits the leavings of the trust estate, aggregating $512.34, with us; and desires that he may be permitted to abandon all these claimant defendants to pursue and battle with each other without his further helpful services and fervently prays that

186

he may now gracefully retire from the whole thing and quickly return, without let or hinderance, to his erstwhile peaceful pursuits.

■ The foregoing facts are properly before the court on the motions to dismiss, since they are gathered either from the complaint or from documents mentioned therein and for present purposes are taken as admitted.

It is noted that while the declaration of trust was worded for the benefit of Edith and the children as well as for the settlor Nelson, the provisions for its termination required only the consents of Nelson and the plaintiff. If, therefore, plaintiff and Nelson acted in good faith and in the absence of fraud as against Edith and the children in thus terminating the declaration, they were wholly within their respective rights. It appears however from a reading of the opinion filed in the Chancery Court on March 25, 1942, five days before the filing of the complaint herein, that our plaintiff was on that date found guilty of fraud as against Edith and the children with relation to the very securities with which we are here concerned, and with that stigma he entered this court.

■ That a speaking motion like a speaking demurrer is valid in this circuit cannot now be denied, Gallup v. Caldwell et al., 3 Cir., 120 F.2d 90, and Victory v. Manning, Collector, 3 Cir., 128 F.2d 415; hence this court has before it the opinion in Chancery from which extracts have been quoted and as well the opinion in Boice v. Boice et al. in the Court of Errors and Appeals, supra, even if their presence could not be spelled out on the face of the record. Indeed, this court may also look to those opinions from a somewhat different angle under the theory of judicial notice. Bowen v. Johnston, Warden, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 445, and cases therein cited, especially Lamar, Ex'r., v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94. So it must, by either approach, be found that our plaintiff came to this court with unclean hands for the reasons stated in the Chancery opinion.

Moreover, the Statute on Interpleader, 28 U.S.C.A. § 41(26), expressly provides that the court will have jurisdiction when it appears that plaintiff has money or property "in his or its custody or possession * * * if * * * the complainant (a) has deposited such money or property * * *

into the registry of the court, there to abide the judgment of the court, or (b) has given bond to the clerk * * * as the court or judge may deem proper" to abide the order or decree of this court.

■ The facts here show that plaintiff has the legal title to certain of the certificates of stock, mentioned in the schedule annexed to the declaration of trust, the physical possession of which he has fraudulently allowed to pass from his control. He has not therefore, nor is he in a position now, to tender the full estate covered by the trust into the registry of this court. Nor can this court rule that the Florida defendants be directed to deposit their respective holdings here since plaintiff's fraud as found by the New Jersey Chancery Court prevents his entrance into this court for equitable relief.

■ In Metropolitan Life Ins. Co. v. Mason et al., D.C., 21 F.Supp. 704, 706, Judge Maris, in treating of interpleader, said: "Interpleader is a well-established equitable remedy which existed long prior to the enactment of the Federal Interpleader Act. The latter consequently did not enlarge the remedial function of the action, except to the extent to which we shall refer presently, but merely extended the jurisdiction of the District Courts to the cases described in the act. Dee v. Kansas City Life Ins. Co., 7 Cir., 86 F.2d 813." The facts in the above case differ from those in the instant case very materially and the case was reversed in Metropolitan Life Ins. Co. v. Mason, 3 Cir., 98 F.2d 668, but not on the proposition of law above stated and which is taken to be sound. The same view was taken by the 8 Circuit in Klaber et al. v. Maryland Casualty Co., 69 F.2d 934, 106 A.L.R. 617, which holds that it is a remedy available to "disinterested" stakeholders, citing Pomeroy, and further that the plaintiff must "have incurred no independent liability to either of the claimants and must stand perfectly indifferent between them, in the position of a stakeholder." Here the plaintiff has incurred a liability to certain of the defendant claimants as is evidenced by the opinion in Chancery above considered. Therefore he is without right to enter this court.

■ Question arises as to whether it can be said that our plaintiff had incurred a liability when it appears that between the date when the Chancery opinion was handed down and the date of the entry of a final

decree thereon, he resorted to this court. The opinion was filed on March 25th, the complaint was filed here on the 30th, and the final decree in Chancery was entered on April 1st. This was of course fast leg-work, but it was not fast enough, because our plaintiff was obliged to carry the opinion of the Chancery Court with him into this court and it clearly fastened a liability on him before the race started. Moreover he was guilty of laches in not moving into this court sooner. He saw fit, in view of the Florida situation and the pending action in Chancery to continue to litigate in the latter court for many months and until a ruling was entered against him. One who seeks equitable relief must be diligent and there is an absence of it here.

An order will be entered dismissing the complaint.