Clyde AUSTIN et al., Appellants,

v.

**TEXAS–OHIO GAS COMPANY,**
Appellee.

No. 14442.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1955.

Harry S. Pollard and Charles L. Krueger, Austin, Tex., for appellant.

Fred W. Moore, Houston, Tex., Vernon Booth Lowrey, Washington, D. C., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by J. O. Mack and Oil Well Processing Company jointly, and Glenn C. Browne, individually, three of the thirty-seven defendants in the court below who here complain of the action of the trial court in overruling their motions to dismiss appellee's complaint, in taking jurisdiction of the cause and in granting a preliminary injunction against them and the other defendants.

The action, commenced by Texas-Ohio Gas Company, sought to join the defendants, each of whom, it was alleged, claimed an interest, either as fiduciary or as beneficiary, in a block of 95,000 shares of its stock which it alleged to have made available to Austin, one of the defendants, in full settlement of any claims he personally had against it and in full settlement of the claims against the company which it had been alleged had arisen through Austin's activities. In substance, Texas-Ohio complained that the stock was not being used for the purpose agreed upon, but that certain of the defendants were disposing of parts of it improperly, and in a manner that would create, or leave unsatisfied, claims against the company. The plaintiff alleged that it was being harassed by the filing of several lawsuits in the state courts and being threatened as to others. It further alleged that defendant Austin and a group of associates, all of whom were joined as defendants (but not all the defendants), were conspiring to destroy plaintiff and that the several suits and threats of suits were calculated to destroy its principal assets in the nature of contracts with others for substantial quantities of natural gas; and further that plaintiff was currently appearing before the Federal Power Commission in Washington seeking a certificate of convenience and necessity for the building of the pipe lines for which plaintiff had been organized, and that the actions of Austin and his associates were jeopardizing the plaintiff's case. Other defendants were joined so that they could assert their claims as to the stock in issue.

The plaintiff tendered into court 23,700 shares of the stock involved, the same being the only shares of the 95,000 which it had still in its possession, and declared in its complaint that it would not transfer on its books any of the remaining shares except on the order of the trial court, and offered a tender of such right or control which it had over the said remaining shares.

On the day before the complaint was filed in the trial court a suit was filed in the state court by J. O. Mack and Oil Well Processing Company against Texas-Ohio and thirty-five other defendants. Of these thirty-five, ten were not included in the Federal suit; on the other hand twelve of the defendants in the Federal suit were not defendants

in the state suit, although two of them, Mack and Oil Well Processing Company, were plaintiffs, and thus were before the court.

Mack's state suit was for a declaratory judgment as to the title to some 330,000 shares of Texas-Ohio's stock, including the 95,000 referred to above. The state court entered an ex parte restraining order which in effect stayed all who had been served or were put on notice of the order and properly brought into the litigation from changing the status of any of the stock of the company. This restraining order was by its terms to remain in effect until the show-cause hearing, which was held on September 3, 1952. On that occasion, the trial judge declined to continue this restraining order unless bond was made by Mack. None was made, and the restraining order was dissolved.

In the Federal court action the trial judge entered an ex parte restraining order on August 30th, set the matter down for hearing on September 9th, at which time it was continued in force upon the making of a $10,000 bond, and a further hearing was set for September 16th, at which time the Court heard further evidence and argument and took under advisement the matter of a permanent injunction. In an order dated September 26, 1952, the trial court found that, unless the injunction issued, "immediate and irreparable injury, loss or damage will result to plaintiff and the 95,000 shares of stock here involved would be sold and disposed of and the proceeds converted, contrary to the purpose and intent of the settlement agree-ment." The court further found that "the existence of plaintiff and its success as a commercial enterprise depend upon its being relieved of the continuous harassment and litigation and the filing of numerous suits * * * all of which greatly hinders and damages plaintiff in obtaining its proper Certificate of Public Convenience and Necessity from the Federal Power Commission and likewise endangers its contracts with reference to the supply of gas and the marketing of gas."

The court thereupon granted the temporary injunction against all served defendants and a restraining order against those not yet served, prohibiting any change in the status of any of the stock and prohibiting the filing or further prosecution of any suit or legal action against complainant without first obtaining the consent of the court.

1. Although originally commenced as an action in equity and for declaratory judgment this action became, by an amendment to the complaint, an action of interpleader or in the nature of interpleader. The complaint refers the jurisdiction of the district court to 28 U.S.C.A. § 1335, and the applicability of that section is not questioned by such of the defendants as have been served and have appeared. Clearly jurisdiction exists, though there may be doubt as to whether it is referable to § 1335[1] or to § 1332[2] of Title 28, U.S.C.A. Without prejudice to the absent defendants, we proceed to a consideration of the appeal upon the assumption that § 1335 is applicable. Since we would reach the same result on the issue now before us

1. That jurisdiction can be predicated upon the kind of diversity existing among the claimants here, under § 1335, see 3 Moore, Federal Practice, 3033–3037, and authorities there cited; and Jaiser v. Milligan, D.C.D.Neb., 120 F.Supp. 599; Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers of America, D.C. W.D.Pa., 92 F.Supp. 841, later voluntarily dismissed, 3 Cir., 194 F.2d 770; see also Girard Trust Co. v. Vance, D.C.E.D.Pa., 5 F.R.D. 109; Fireman's Fund Ins. Co.

v. Irwin, D.C.N.D.Ga., 82 F.Supp. 180; Mallonee v. Fahey, D.C.S.D.Cal., 117 F. Supp. 259, 275; Globe & Rutgers Fire Ins. Co. v. Viele, D.C.D.Neb., 110 F.Supp. 889.

2. That jurisdiction in this case can be predicated upon § 1332, see 3 Moore, Federal Practice 3004, and authorities there cited; and Maryland Casualty Co. v. Glassell-Taylor & Robinson, 5 Cir., 156 F.2d 519, 522 footnote 2, 525.

whether § 1332, § 1335, or both are applicable, we consider it appropriate to proceed on such assumption.

■■■ Under the provisions of 28 U.S.C.A. § 2361 the trial court had the power to enjoin the prosecution of any legal proceedings in the state court affecting the stock here involved if the action was really one of interpleader or in the nature of interpleader. Under the ordinary equitable powers of the trial court it could enjoin any suits against this plaintiff whether or not affecting the stock, in order to terminate all such litigation in a single suit. State of Texas v. State of Florida, 306 U.S. 398, 412, 59 S.Ct. 563, 830, 83 L.Ed. 817.

2. There are ample grounds for the finding of the trial court that the state court suit, being an action in personam, could not fully and finally adjudicate all the matters here sought to be brought in issue. For example, not all the interested parties could be brought within the jurisdiction of the state court. Although the appellants J. O. Mack and Oil Well Processing Company there sought to get some of the unknown or non-resident claimants in by speaking of his action as a suit against them as a class, this was not effective because the claimants were not persons having a substantial identity of interest in the stock in question. See Knioum v. Slattery, Tex.Civ.App., 239 S.W.2d 865, 868; Matthews v. Landowners Oil Ass'n, Tex. Civ.App., 204 S.W.2d 647, 651; Hicks v. Southwestern Settlement & Development Corp., Tex.Civ.App., 188 S.W.2d 915, 923; Restatement, Judgments, § 86, p. 422.

The defendants in the state suit had a variety of different claims against the stock of Texas-Ohio and they could in no way be bound by denominating them as a class. Moreover, many of the parties joined in the federal court suit were not even made parties in the state court action.

3. There was also ample basis for the trial court's finding that irreparable damage would result from a continuance of the trend of litigation and threat and controversy between parties, all of whose interests should have been furthered by a prompt and inclusive end of inter-company disputes. In fact appellants here make no point of an insufficiency of evidence to sustain the trial court's findings except on the matter of the propriety of his retaining jurisdiction as against the state court.

4. Appellants complain that the trial court, in issuing its injunction, went too far. The statute that specifically authorizes the trial court to enjoin state court proceedings relates to those *"affecting the property, instrument or obligation involved in the interpleader action"*. Here the court enjoined the defendants from taking any other legal action of any kind and from prosecuting any other pending suit against plaintiff without first obtaining the consent of the court.

Oil Well Processing Company, which brings a joint appeal here with its president, Mack, takes the position that it only sought clarification of its contract rights in the suit pending in the state court, and that this did not affect the property involved in the interpleader. Reference to the Mack-Oil Well Processing Company suit in the state court clearly refutes this claim. That was a suit brought by Mack and his company, Oil Well Processing Company, joint plaintiffs, in which they sought and obtained a restraining order against any change in the status of the stock of Texas-Ohio, specifically referring to the 95,000 shares in issue here. There cannot be any serious contention that the state court suit sought a complete accounting of the stock of Texas-Ohio. There is nothing in the record to show that the trial court would not have relaxed the injunction to permit Oil Well Processing Company to file a separate suit to determine its contractual rights, if the rights of that company could not be fully protected in the Federal court suit.

■■■ There can be no doubt that the court had the legal power to enjoin

all actions against the complainant below. The right to interplead is an equitable right. It existed long before the statute made express provision for it. This is clear from the decision of the Supreme Court in State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 570, 830, 83 L.Ed. 817. In that case the Court said:

"In the case of * * * bills of interpleader and bills in the nature of interpleader, the gist of the relief sought is the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing. These risks are avoided by adjudication in a single litigation binding on the parties.

"While courts of equity in such suits may and frequently do give incidental relief by injunction to secure the full benefits of the adjudication and to terminate the litigation in a single suit, they are not bound to do so and their adjudication of the conflicting claims is not any the less effective as res judicata because not supplemented by injunction."

■ 5. What we have said above partially answers a further contention of appellants, which stated in its most plausible aspect is that this court lacks jurisdiction under 28 U.S.C. § 1335, because the plaintiff has not met a condition precedent to jurisdiction under that statute; namely, that it deposit into the registry of the court *all* of the property in controversy.[3] It is true that the plaintiff seeks a determination of rights in 95,000 shares but tendered into court only the 23,700 shares still within its possession. There are at least two answers to appellants' contention. In the first place, the plaintiff had some control as to the untendered balance of 71,300 shares. Having issued these to certain defendants in trust for certain purposes under the settlement with Austin, it no longer had a possessory or proprietary interest in them, but nevertheless did have the power to refuse to transfer the certificates on its books if such transfers were not in accordance with the purpose for which they were given, or were in violation of the trust. Plaintiff declared in its complaint that it would not make any transfers except on the order of the court and it specifically tendered "such right or control" which it had over the remaining shares.

■■ In the second place, this case can be viewed as an action in the nature of interpleader concerning *these* 23,700 shares, in which it is alleged that each of the defendants has some claim. It seems the only natural construction, in fact, of 28 U.S.C. § 1335(a) (2) that this is the "property" which it is necessary to deposit in court, in a case such as this involving specific property and not simply a claim for money. The applicable words of the statute are: "The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society *having in his or its custody or possession* * * * *property* of the value of $500 or more * * * if * * * the plaintiff has deposited *such* * * * *property* * * into the registry of the court * * *." [Italics added.] The words "such property" logically refer to property in plaintiff's custody or possession; it follows that the statute does not require a plaintiff, in order to obtain jurisdiction, to perform the impossible condition of depositing into court specific property which he does not have in his possession, provided of course that he can and does deposit money or specific property in his possession of the value of $500 or more, and which is the subject of con-

---

**3.** See U.S.C. § 1335(a) (2); 3 Moore, Federal Practice 3038, and cases there cited; Edner v. Massachusetts Mutual Life Ins. Co., 3 Cir., 138 F.2d 327.

flicting claims of the defendants.[4] Nor does it deprive the court of its statutory jurisdiction, perfected by the deposit of this property into court, for the plaintiff to allege that the 23,700 shares are part of a larger block of 95,000, and that the total rights of the several parties cannot finally be determined unless the court incidentally considers the interests of the various defendants in the larger block of stock. There is nothing inconsistent with this rationale in the cases [5] holding that a condition precedent to jurisdiction under the statute is absent when plaintiff deposits a sum of money smaller than that which is in fact claimed by some of the claimants; because the words of the statute applicable in those cases say that the district court will have jurisdiction when the plaintiff has " * * * issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money * * * of such amount or value, or

[is] under any obligation written or unwritten to the amount of $500 or more, if * * * the plaintiff has * * * *paid the amount of or the loan or other value of such instrument or the amount due* under such obligation into the registry of the court * * *." [Italics added.] Obviously this requirement is quite different. When claims for a sum of money only are involved, payment of the entire sum (or giving of a bond) is a condition precedent to the court's jurisdiction. But when claims for specific property are involved, the statute imposes the condition of depositing only the specific property in plaintiff's possession, and the further condition that such property be of the value of $500 or more.

■■ No injustice can result to the claimants from this, because the equitable doctrines that one seeking equitable relief must do equity and must come into court with clean hands apply in addition to the jurisdictional requirements of the statute;[6] consequently he

---

4. That this correctly states the statutory requirement is supported by Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 47, 84 L.Ed. 85. Although the Supreme Court did not discuss the adequacy of the deposit made in that case to confer jurisdiction under 28 U.S.C. § 1335, it necessarily held that the deposit was sufficient, in affirming the Court of Appeals' decision. In that opinion of the Court of Appeals for the 9th Circuit, 99 F.2d 651, at page 653, it appears that the plaintiff was not in possession or custody of the shares of stock claimed by defendants, and tendered only the accrued dividends on those shares at the time it commenced the action. The stock certificates were later deposited into court during the pendency of the action, evidently by the several defendants. Thus the case seems clear authority that a plaintiff is not required in an action under 28 U.S.C. § 1335, to deposit specific chattels not in his possession or custody (or a bond in lieu thereof) as a condition to commencing the action, provided that he is able to comply with the deposit requirement by tendering other money or property involved in the dispute, and of the value of $500 or more.

See also United States v. Sentinel Fire Ins. Co., 5 Cir., 178 F.2d 217, where

this court went even further and held that in an action under 28 U.S.C. § 1335, involving a sum of money only, a deposit was sufficient to confer jurisdiction although it was only $14,133.33 and some of the defendants claimed $17,000 was owing. The case of Boice v. Boice, D.C.D.N.J., 48 F.Supp. 183, affirmed 3 Cir., 135 F.2d 919, is apparently contrary, with respect to the necessity of deposit of specific property not in possession of the plaintiff, to our position herein. However, the Boice case rests upon other quite sufficient grounds. The plaintiff had given securities involved in the dispute to one claimant to defraud the other. The court held that he was barred to seek equitable relief by laches and unclean hands. The court of appeals held that the plaintiff was barred on the additional ground of lack of diversity of citizenship.

5. Edner v. Massachusetts Mutual Life Ins. Co., 3 Cir., 138 F.2d 327; Pacific Mutual Life Ins. Co. v. Lusk, D.C.W.D.La., 46 F. 2d 505; Connecticut General Life Ins. Co. of Hartford, Conn. v. Yaw, D.C.W.D. N.Y., 53 F.2d 684. But see a case from this Circuit contra, United States v. Sentinel Fire Ins. Co., 178 F.2d 217.

6. "Interpleader has long been recognized as an equitable remedy available in fed-

who seeks relief under the statute must have a reasonable explanation why he does not have all the property involved in the dispute still in his possession, must not have disposed of any of it wrongfully, and must be prepared to do anything reasonably necessary to recover all of the property and place in the court the power to deal with it. But to construe the statute differently, as the court did in Boice v. Boice, D.C. D.N.J., 48 F.Supp. 183, affirmed by the Third Circuit, 135 F.2d 919, would result in injustice in a case such as is set out in the complaint in the present case. The statute being remedial in nature, it must be construed so as not to result in injustice.[7]

6. There is nothing in the record here before us to indicate that any of the questions raised in the pending state court litigation or any that might later ensue could not be raised by appropriate pleadings, tried, and disposed of in the case below. There does not appear to be any state tribunal where similar and equally adequate relief could be granted to all parties. Under these circumstances, and in the light of the amply supported findings of fact, we find no error in the order of the trial court in overruling the motion to dismiss and in granting the temporary injunction.

The judgment is affirmed.

---

eral courts. It is not primarily dependent upon statute, but was maintainable under the general equity jurisdiction." Standard Surety & Casualty Co. of New York v. Baker, 8 Cir., 105 F.2d 578, 580. General principles of equity still apply notwithstanding the adoption of the statute, the statute having enlarged the availability of the remedy by providing special rules as to diversity of citizenship and venue, but not changing the substantive law which existed before. See also Mallers v. Equitable Life Assurance Soc., 7 Cir., 87 F.2d 233, certiorari denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343; United States v. Sentinel Fire Ins. Co., 5 Cir., 178 F.2d 217, 222, 233.

7. Deposit of the money or property in controversy into court was a requirement in actions of interpleader also at common law. This requirement has been relaxed in many cases where no statute modifying the common law was involved, State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817, 121 A.L.R. 1179; Baldwin v. Constantine, 214 Ala. 446, 108 So. 345; Phoenix Ins. Co. v. Carey, 80 Conn. 426, 68 A. 993; Nash v. Smith, 6 Conn. 421; Webster v. McDaniel, 2 Del.Ch. 297; Smith v. Nicholson, 221 Mo.App. 428, 289 S.W. 349, certiorari quashed State ex rel. Bradley v. Trimble, 316 Mo. 97, 289 S.W. 922; C. F. Duke Storage Warehouse, Inc., v. Keller, 141 N.J.Eq. 43, 55 A.2d 901; see note approving Duke case, 1 Vanderbilt L.Rev. 459, and in other jurisdictions by rule or statute (e. g., Penna.Rule Civ.

Proc. 2303(a) (3), Penna.Stat.Ann. Title 12 App. (Purdon, 1939)). There is also authority that the requirement of a deposit into court never existed in actions in the nature of interpleader. See Frumer, "On Revising the New York Interpleader Statutes," 25 N.Y.U.L.Rev. 737, 768, and authorities there cited. It also appears that deposit is not a requirement in interpleader actions brought under Federal Rules Civ.Proc. Rule 22, 28 U.S.C.A.; see F.R.C.P.Appendix of Forms, Official Forms 18 and 21, 28 U.S.C.A. These cases and rules indicate that the necessity of a deposit in the generality of cases may be a technicality carried over from the common law, serving no function which could not be served better by the flexible doctrines of "clean hands" and "doing equity."

However, the requirement of a deposit in 28 U.S.C. § 1335 does serve a useful purpose. See 3 Moore, Federal Practice 3038: "Since a claimant might have to travel a long distance to litigate the claim it is not unreasonable to require that the complainant make an actual deposit of the fund in court or give a bond in lieu thereof." As we decide the present case, a deposit of property or money of the value of $500 is always necessary; hence, the purpose of this provision of the statute is fully met by our decision. The modern trend is away from useless technicalities in the law of interpleader, in respect to the deposit requirement as well as in other respects. Our decision in this case, we think, is fully in accord with this trend and the sound policy behind it.