# HENRY O. WACKERBARTH AND OTHERS v. WILLIAM WEISMAN.
## GATEWAY HOLDING COMPANY AND OTHERS, GARNISHEES.[1]

May 17, 1940.

No. 32,388.

*Ueland & Ueland,* for appellants.

*Gainsley, Goldstein & Levitt* and *Lew C. Church,* for Henry Wackerbarth, William Weisman, Gateway Holding Company, and William Weisman Holding Company, respondents.

[1]Reported in 292 N. W. 214.

HILTON, JUSTICE.

Appeal from an order of the district court for Hennepin county discharging two corporate garnishees.

Plaintiffs sued in the district court of this state upon a judgment procured against defendant in California. Ancillary to the main action, a garnishment proceeding was started against certain corporations, including the Gateway Holding Company and the William Weisman Holding Company. Defendant and these particular garnishees were represented by the same attorneys at the disclosure.

Mr. Levitt, disclosing for the Gateway Holding Company, was asked:

Q. "And as of that time [July 17, 1939], what stock did the defendant William Weisman have in the garnishee company?

By the witness: "I refuse to answer that question on the ground that the affidavit of garnishment is not broad enough to cover such an inquiry, nor is the garnishment summons."

Plaintiffs' attorney then stated that plaintiffs claimed that any transfer of stock made prior to the service of the garnishee summons was void as to them. The garnishee was then asked:

"Will you please state what transfers of stock in the garnishee company have been made by the defendant William Weisman, the certificate numbers transferred, the number of shares represented by each certificate, the transferee of each certificate, and the dates of such transfers?"

The garnishee refused to answer on the grounds previously mentioned and in addition stated that the question was not within the purview of the garnishment proceedings.

Mr. Levitt also disclosed for the William Weisman Holding Company and responded similarly to questions which were in substance identical to those quoted.

On motion, the district court refused to compel the garnishees to answer. Of this plaintiffs complain.

In First Nat. B. & T. Co. v. Malerich, 193 Minn. 626, 259 N. W. 546, it was held that there could be a garnishment although the certificates had not been issued or delivered at the time of the service on the corporate garnishee. The garnishee was ordered to execute and deliver the certificates to the sheriff for sale as upon execution. Under the facts there involved, we did not need to go any further for decision. The question whether there could be a garnishment of shares of stock after the certificates had been delivered was expressly left undecided.

Under this decision plaintiffs were legally entitled to inquire whether defendant owned shares of stock in the corporations and whether the stock certificates evidencing the interest had been delivered. But plaintiffs' questions were more comprehensive. The first one was directed toward ascertaining *what* stock defendant had in the corporations. Such an interrogatory as a practical matter required an answer in numerical terms as to the quantity of stock owned by defendant rather than disclosure as to its nature, *i. e.,* whether common or preferred. The inquiry was proper only if the plaintiffs had a right to garnish defendant's shares regardless of whether or not they had been delivered to the shareholder. Only then is it material what stock defendant owned since it would be information establishing the extent of the garnishee's responsibility. To determine this question, examination of the nature of shares of stock must be made in light of our garnishment statutes.

That the shareholder has a property interest in the corporation irrespective of the issuance of the certificate seems evident, 11 Fletcher, Cyc. Corp. (Perm. ed.) § 5100, p. 93, although it must be remembered that it is an intangible and incorporeal interest which is generally dealt with and transferred by a stock certificate.

"A share of stock is not a mere debt or obligation of the corporation; it represents the interest of its owner in the corporation * * * it is a property interest in the corporation itself."

In re Estate of Lund, 183 Minn. 368, 370, 236 N. W. 626, 627.

Thus one may be a stockholder despite the fact that the stock certificate has not been issued, Holland v. Duluth I. M. & D. Co. 65 Minn. 324, 68 N. W. 50, 60 A. S. R. 480, and stockholder's liability attaches, Marin v. Olson, 181 Minn. 327, 232 N. W. 523.

Shares of stock are personal property in the form of a property interest in the corporation. 11 Fletcher, Cyc. Corp. (Perm. ed.) § 5096, p. 71. And in this state shares of stock are the subject of attachment and levy of execution. 2 Mason Minn. St. 1927, §§ 9346, 9425. 2 Mason Minn. St. 1927, § 9429, recognizes shares of stock to be personal property.

"Other personal property shall be levied on by leaving a certified copy of the execution, and a notice specifying the property levied on, * * * if stock or an interest in stock of a corporation, with the president, secretary, treasurer, cashier, or managing agent thereof."

That "stock" is used in its technical sense and not as synonymous to "certificates" is not only illustrated by the method of levy provided but by § 9430 as well, since it is there provided that the attaching or levying officer can, under certain conditions, obtain information as to the "number of rights or shares of such debtor in the stock of the corporation." In no sense can it be said that the levy or attachment is of the certificates. In addition, the procedure outlined partakes of the nature of garnishment. If the share interest is personal property sufficiently capable of being dealt with for attachment and levy, there does not seem to be a persuasive reason why it should not be subject to garnishment, although it must be recognized that most courts, perhaps with different case and statute background, refuse to do so, 28 C. J. p. 167, § 213. Of course the corporate garnishee and others must be protected here as securely as in the other processes. But there arises the question relating to the delivery of the stock certificate.

It has been aptly stated that "a certificate of stock in a corporation is not the stock itself. It is the mere evidence of the holder's ownership of the stock and of his rights as a stockholder

to the extent specified therein, just as a promissory note is merely the evidence of the debt." 11 Fletcher, Cyc. Corp. (Perm. ed.) § 5092, p. 55. Accord, Galbraith v. McDonald, 123 Minn. 208, 143 N. W. 353, L. R. A. 1915A, 420, Ann. Cas. 1915A, 464. Recently we have affirmed this proposition in Marin v. Olson, 181 Minn. 327, 328, 232 N. W. 523, wherein it was said: "Such a certificate is only evidence of title to stock." Logically, from the foregoing it seems that the following proposition is a necessary conclusion:

"For the purpose of  *  *  *  garnishment the stock is generally regarded as being in the possession of the corporation in which the shares are held although the certificates are in the possession of the stockholder  *  *  *. And it is also generally held that the levy must be upon the shares of stock and cannot be made by seizing the stock certificates, since they are not the stock itself, but are merely evidences of it." 11 Fletcher, Cyc. Corp. (Perm. ed.) § 5109, p. 128, and cases cited.

When it is remembered that the certificates are only the evidence of the ownership of the share interest sought to be reached by the garnishment, it becomes obvious that it makes no difference whether the certificates have been delivered to the shareholder or not. The interest which they represent is as much under the garnishee's control in the one instance as in the other. Of course the court will have to take necessary steps to insure that corporate activity is not interrupted during the process of realizing on their value, for clearly the transfer of stock ownership cannot and should not modify title to the corporate property.

What has been said requires discussion of Puget Sound Nat. Bank v. Mather, 60 Minn. 362, 62 N. W. 396. The holding is accurately set out in the syllabus as follows:

"Certificates of stock in a foreign corporation are personal property, and, when in the hands of third parties within this state, are subject to garnishment proceedings, under G. S. 1894, § 5309."

The case must be limited to the actual holding expressed above. So far as certificates of a foreign corporation are concerned, garnishment of the person, other than the owner, in possession of the certificates is sufficient. We do not think the two rules can be harmonized logically, and the present decision must not be understood to overrule the· Mather case. The present pattern of our law provides a satisfactory method to solve an exceedingly practical problem and permits a creditor to reach assets which in all fairness and justice should be vulnerable to the claim. Garnishment of the certificate holder of stock in a foreign corporation gives some measure of effective control. As to corporations subject to the jurisdiction of our courts, the more practical and feasible method is to garnish the corporation just as plaintiffs here did. Other states have adopted a similar method to deal with the conflict of logic and practicability. See 19 Minn. L. Rev. 808, 809.

On the record before us, the uniform stock transfer act, 3 Mason Minn. St. 1940 Supp. §§ 7492-71 to 7492-96, is not involved. Under it a different result might be mandatory.

Necessarily we conclude that it was error not to compel the garnishees to answer to the first question, for it went directly to the extent of the garnishees' responsibility.

We now turn to the second question.

The basis of the second question was that transfers of stock made by defendant prior to the service on the garnishee were void as to plaintiffs. We think the second question should have been answered. If there were any transfers which were fraudulent as to plaintiffs, they should be entitled to obtain the advantage of the knowledge possessed by the garnishee so that the rights of all parties could be resolved and the garnishee's liability to the defendant's creditors determined. See, generally, 3 Dunnell, Minn. Dig. (2 ed.) §§ 3997 and 4000, p. 373.

A motion to dismiss the appeal has been made. After a careful examination· of the motion papers, we have concluded that the matters therein are not properly before us at this time. We

have refrained from passing on any matters there presented for this reason.

The order appealed from is reversed and the cause remanded for proceedings consistent with the views herein expressed.

Order reversed and the cause remanded.

STONE, JUSTICE (concurring in the result).

My concurrence in the result is much limited. I think the garnishee was a bit too summary in judging for itself the legal breadth of the affidavit of garnishment. It seems to me that the inquiry should have gone far enough to disclose whether the garnishee had "in his hands or under his control" (2 Mason Minn. St. 1927, § 9356) any property belonging to the defendant. If the disclosure had been that defendant had or was entitled to stock the certificates for which were unissued or, if issued, remained in the garnishee's possession or control, the garnishment could have been sustained under the rule of First Nat. B. & T. Co. v. Malerich, 193 Minn. 626, 259 N. W. 546.

I disagree with the conclusion that shares of stock in a corporation can be impounded by garnishment of the company when the certificates are issued and in the hands of the original holder or some assignee thereof. It is of no avail to draw refined and purely academic distinction between the stock and the certificates, between the former as the actual property and the latter as the evidence thereof. As a practical matter, it is another of the many cases where the property is of no value without the tangible, assuring, and transferable evidence thereof. That is recognized by plain implication, if not expressed, in all of our cases. Even in the Malerich case it was deemed necessary to have the certificates issued and put in the hands of the sheriff to abide the result of the action against the defendant. That course had our approval.

In short, the property is so far integrated with the evidence of it, "title to a chattel is [so much] merged in a document" (Restatement, Conflict of Laws, § 99), that for purposes of garnishment there can be no possession or control over the property with-

out possession or control of the certificate. Stock certificates are subject to levy and attachment. Trover lies for their conversion. They may be the subject of escheat. But could an escheat of corporate stock be declared without jurisdiction *in rem* over the certificates? I doubt it. Surely, under the rule of First Trust. Co. v. Matheson, 187 Minn. 468, 246 N. W. 1, 87 A. L. R. 478, we would have no jurisdiction *in rem* over corporate stock without such jurisdiction of the certificates. Yet, to hold that the garnishee corporation is subject to garnishment in respect to outstanding stock, even though it does not have the certificates and the court has no jurisdiction of them *in rem*, is to hold that, notwithstanding, such jurisdiction will be exercised to the extent of impounding the stock. That there may be jurisdiction *in personam* of the holder does not cure the lack of possession or control in the garnishee, which the statute demands to make property subject to garnishment.

To me it is obvious that where the stock certificates have been issued and are in the possession or control of others, it is a violation of our statute to subject the corporation to garnishment in respect thereto. I just cannot see that it has that possession or control of the stock which, under our statute, is a condition precedent to garnishment. We have never so held. In other states, with similar statutes, garnishment does not lie. Pease v. Chicago Crayon Co. 235 Ill. 391, 85 N. E. 619, 18 L.R.A.(N.S.) 1158, 14 Ann. Cas. 263.

With a statute such as ours, imposing so clearly and mandatorily the condition of possession or control, it is idle to discuss the generalizations of text writers or decisions based upon more elastic statutes.

Mr. Justice Loring took no part in the consideration or decision of this case.