379 F.2d 650
 Phillip KITZER, Sr. and Phillip Kitzer, Jr., Appellants,
v.
PHALEN PARK STATE BANK OF ST. PAUL, Homer A. Bonhiver as Receiver of American Allied Insurance Company and Allied Realty of St. Paul, Inc., Appellees.
 No. 18586.
 United States Court of Appeals Eighth Circuit.
 July 6, 1967.
 
 Mark L. Schwartzman, Chicago, Ill., for appellants; Franklin Petri, Jr., Minneapolis, Minn., with him on the brief.
 Samuel H. Morgan, St. Paul, Minn., for appellees Homer A. Bonhiver, as Receiver of American Allied Ins. Co., and Allied Realty of St. Paul, Inc.
 Theodore R. Mellby, Montgomery, Minn., for appellee Phalen Park State Bank of St. Paul.
 Before VAN OOSTERHOUT, MATTHES and LAY, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 This is an action involving the Federal Interpleader Act, 28 U.S.C. § 1335. The Phalen Park State Bank of St. Paul, Minnesota, instituted the action joining as defendants Phillip Kitzer, Sr. and Phillip Kitzer, Jr., citizens of the State of Illinois, and Homer A. Bonhiver, receiver for American Allied Insurance Company, a citizen of the State of Minnesota, and Allied Realty of St. Paul, Inc., also a citizen of Minnesota. Under 28 U.S.C. § 2361, nationwide service of process is authorized and service was made on the Illinois citizens pursuant thereto.
 
 
 2
 The action concerns conflicting claims between two groups of claimants of diverse citizenship to ownership of 100 shares of the capital stock of the bank.[1] At the commencement of the action on October 25, 1965, the two certificates were in the possession of the Kitzers and were not deposited into the registry of the court by the bank. The bank alleged in its complaint that it was a mere stakeholder claiming no interest in the ownership of the stock, but because of conflicting claims as to the ownership of stock it was subjected to a multiplicity of suits. Contemporaneously with the filing of the complaint the bank filed a surety bond in the amount of $2,000.00, approved by the court. The Kitzers pursuant to a court order deposited the certificates endorsed in blank into the registry of the court. The trial court held that jurisdictional requirements were satisfied; that the Kitzers owned no beneficial right, title or interest in the stock; that the certificates be delivered to the bank and that the bank transfer the shares on its records and issue new certificates to the owners of the stock. We affirm.
 
 
 3
 Appellants bring this appeal and contend, as they did below, that the bank's action should be dismissed for lack of jurisdiction over the subject matter under provisions of § 1335. Appellants contend that where there are rival claimants to a specific property it is a prerequisite to jurisdiction under the interpleader statute that a plaintiff deposit the property into the registry of the court. Appellants urge the bank did not and could not meet this requirement and therefore the court was without jurisdiction.
 
 
 4
 The requirement that the stakeholder deposit money or property or the giving of a bond in lieu thereof is a condition precedent to obtaining interpleader jurisdiction. 3 Moore, Federal Practice § 22.10 at 3077-86 (2d ed. 1966); Treinies v. Sunshine Mining Co., 9 Cir. 1939, 99 F.2d 651, aff'd 308 U.S. 66, 72, 60 S.Ct. 44, 84 L.Ed. 85. Where property alone is involved the courts have liberally construed the interpleader statute[2] to allow the deposit of only the specific property in plaintiff's possession with the condition that the property deposited be of the value of $500.00 or more in compliance with the statute. See Austin v. Texas-Ohio Gas Co., 5 Cir., 218 F.2d 739, 744-745. However, many situations may exist where it becomes impracticable for a stakeholder to deposit the specific res in controversy into the registry of the court. Cf. Edner v. Massachusetts Mutual Life Ins. Co., 3 Cir., 138 F.2d 327. It is because of this that the Interpleader Act was amended to allow the use of a surety bond. The Senate Judiciary Report specifically reads:
 
 
 5
 "The amended bill allows the stakeholder, as an alternative to a deposit, to file a surety bond approved by the court. Although the disputed subject matter will ordinarily be deposited in court, situations sometimes arise where the rigid requirement of a deposit would prevent just relief." Sen. Rep.No. 558, 74th Cong., 1st Sess., p. 6.
 
 The act itself reads in part as follows:
 
 6
 "* * * action of interpleader or in the nature of interpleader filed by any * * * corporation * * having * * * custody or possession * * * property of the value of $500 or more, or having issued a * * * certificate[3] * * * or other instrument of value * * * of $500 or more, if
 
 
 7
 "(1) Two or more adverse claimants, of diverse citizenship * * * are claiming or may claim to be entitled to such * * * property or to any one or more of the benefits arising by virtue of any * * * certificate * * * and if (2)
 
 
 8
 (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy." (Emphasis ours) Tit. 28 U.S.C. § 1335.
 
 
 9
 If the bank is not a stakeholder of "property" under the Act it does not qualify to utilize the interpleader action to resolve the present controversy by the deposit of a bond in court.
 
 
 10
 The determination of what "property" is to be deposited under Tit. 28 § 1335 depends upon the person who invokes interpleader and what he asserts to be the subject matter of the controversy. Here the complaint alleges the dispute is over the "ownership" of the stock of the corporation. It might be argued that since the certificate of stock is in the possession of the appellant in Illinois, the Bank cannot qualify as a stakeholder to bring an interpleader suit. But such an assumption misreads the nature of the controversy. As was stated in First Nat. Bank of Jersey City v. Fleming, D.N.J., 10 F.R.D. 159 at 160, "[t]he property here in litigation is not the certificate of stock but the shares of stock of which the certificate is merely evidence." This statement does not eliminate the deposit of a stock certificate as being sufficient for jurisdictional purposes under similar circumstances. See Wertheimer v. Bank of Nova Scotia, S.D.N.Y., 140 F.Supp. 950. However, at the same time where the corporation has "custody or possession" of the shares of stock as distinguished from the certificate, it should not eliminate the corporation as a stakeholder under the act. Even though the certificate of stock is treated as property for some purposes it still has no intrinsic value itself separate from the share of stock it represents. See 18 C.J.S. Corporations § 258, p. 723; 11 Fletcher, Cycl., Corporations, §§ 5092, 5096, 5097.
 
 
 11
 As the Supreme Court said in Pacific Nat. Bank v. Eaton, 141 U.S. 227 at 234, 11 S.Ct. 984 at 985, 35 L.Ed. 702:
 
 
 12
 "A Certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself."
 
 
 13
 Such a dichotomy is not strange to the law. Even in Minnesota after the passage of the Uniform Stock Transfer Act, e. g., Minn.Stat.Annot. c. 302, the shares of stock of the corporation as distinguished from the certificates were subject to garnishment at the situs of the corporation. In Wackerbarth v. Weisman, 207 Minn. 507, 292 N.W. 214, the Minnesota Supreme Court said:
 
 
 14
 "It has been aptly stated that `a certificate of stock in a corporation is not the stock itself. It is the mere evidence of the holder's ownership of the stock and of his rights as a stockholder to the extent specified therein, just as a promissory note is merely the evidence of the debt * * *.' 11 Fletcher, Cyc.Corp. (Perm.ed.) § 5092, p. 55. Accord Galbraith v. McDonald, 123 Minn. 208, 143 N.W. 353, L.R.A.1915A, 420, Ann.Cas. 1915A, 464. Recently we have affirmed this proposition in Marin v. Olson, 181 Minn. 327, 232 N.W. 523, wherein it was said: `Such a certificate is only evidence of title to stock.'
 
 
 15
 "Logically, from the foregoing, it seems that the following proposition is a necessary conclusion: `For the purpose of * * * garnishment the stock is generally regarded as being in the possession of the corporation in which the shares are held although the certificates are in the possession of the stockholder * * *. And it is also generally held that the levy must be upon the shares of stock, and cannot be made by seizing the stock certificates, since they are not the stock itself, but are merely evidences of it.' 11 Fletcher, Cyc.Corp. (Perm.ed.) § 5109, p. 128, and cases cited." 292 N. W. at 216.
 
 
 16
 And such a distinction is not to be confused with the actual capital and property of the corporation itself. 11 Fletcher, Cycl., Corporations § 5100.
 
 
 17
 Discussion of the corporate shares as "property" becomes even more significant when one considers Tit. 28 U.S.C. § 1655.[4] Corporate shares of stock as distinguished from the certificate, have long been considered "property" by the Supreme Court of the United States for jurisdictional purposes in an action to clear title of stock under § 1655.
 
 
 18
 In Jellenik v. Huron Copper Mining Co., 177 U.S. 1, at 13, 20 S.Ct. 559, at 563, 44 L.Ed. 647, the court said:
 
 
 19
 "* * * Whether the stock is in Michigan so as to authorize that state to subject it to taxation as against individual shareholders domiciled in another state is a question not presented in this case, and we express no opinion upon it. But we are of opinion that it is within Michigan for the purposes of a suit brought there against the company — such shareholders being made parties to the suit — to determine whether the stock is rightfully held by them. The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicil of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner. * * *" (Emphasis ours).
 
 
 20
 This was approved by this court in Thompson v. Terminal Shares, 8 Cir., 89 F.2d 652. See also 3 Moore, Federal Practice § 22.04(2). Cf. Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078.
 
 
 21
 And such an interpretation has been made notwithstanding the existence of the Uniform Stock Transfer Act in the state. See discussion in McQuillen v. Nat'l Cash Register Co., 13 F.Supp. 53, aff'd on rehearing 27 F.Supp. 639, aff'd 4 Cir., 112 F.2d 877. Cf. Standard Oil Co. v. New Jersey, 341 U.S. 428 at 437-441, 71 S.Ct. 822, n. 15 (escheat statute).
 
 
 22
 Under the interpleader statute "in personam" jurisdiction is attained while under § 1655 the action is "in rem." But this distinction does not affect the true definitive nature of corporate shares of stock as fungible property. It should be more favorable for the present dispute to be decided under § 1335 rather than § 1655. The corporation and appellants are parties to the interpleader action, whereas under § 1655 the receiver could theoretically proceed only against the "res" itself.[5]
 
 
 23
 All the elements of statutory interpleader exist in the present case. The corporation is a stakeholder within the plain language of the statute, and, under the approval of the district court, has properly deposited a bond to secure its performance.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The receiver of the American Allied Insurance Co. and Allied Realty, Inc. claim the certificates were issued to the Kitzers to qualify them as bank directors under Minn.Stat.Ann. 48 § 48.06 (Supp.1966). The Kitzers later resigned from the Board of Directors and Bonhiver, as receiver, and Allied Realty now claim to be the beneficial owners of the 100 shares of stock on the theory that the purported transfers to the Kitzers were made without consideration
 
 
 [2]
 As Professor Moore states:
 "Because of its undoubted utility, interpleader provisions have been held in countless federal decisions to be remedial and thus properly to be liberally construed so as best to effectuate their purposes." 3 Moore, Federal Practice, § 22.02 at 3005.
 See also State Farm Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 where the Supreme Court in speaking of statutory interpleader says it represents "* * * the legislative purpose broadly to remedy the problems posed by multiple claimants to a single fund, * * *" decided April 10, 1967.
 
 
 [3]
 Although we do not decide here, it is a reasonable construction that the word "certificate" herein relates to an indebtedness. A certificate of stock is merely evidence of ownership of the stock and is not evidence of a debt. See 11 Fletcher, Cycl., Corporations, §§ 5091-92, 5098 (perm.ed.rev.repl. 1958)
 
 
 [4]
 "In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain
 "Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.
 "If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.
 "Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just." Tit. 28 U.S.C. § 1655.
 
 
 [5]
 Questions of assessment, the return of the certificate, and any other matter properly relating to the ownership of the stock are resolved in the interpleader action by reason of the personal jurisdiction of appellants. Under § 1655 only the question of title can be cleared and the parties are perhaps left to further litigation if other problems exist
 
 
 
 25
 MATTHES, Circuit Judge (dissenting).
 
 
 26
 With due deference to the views of my colleagues I respectfully dissent.
 
 
 27
 If the shares of stock in controversy constitute "property" within the meaning of 28 U.S.C. § 1335, as the majority explicitly hold, I believe it was encumbent upon the bank to deposit, or tender into court, such shares, and that the filing of the bond in lieu of the deposit does not satisfy the jurisdictional requirements of the statute.[1]
 
 
 28
 Concededly, the statute does authorize the giving of a bond in lieu of a deposit but the Report of the Senate Committee on the Judiciary on the bill which became the Act of January 20, 1936 (Section 1335),[2] and cases interpreting that Act, persuade me to conclude that where, as here, the stakeholder is in possession of specific property, the provision for the giving of a bond is not applicable.
 
 
 29
 In discussing the "Changes from Present Law" the Senate Report in paragraph 5 states:
 
 
 30
 "The stakeholder may either deposit the fund in court or file a bond. * * * (Emphasis added).
 
 
 31
 "The amended bill allows the stakeholder, as an alternative to a deposit, to file a surety bond approved by the court. Although the disputed subject matter will ordinarily be deposited in court, situations sometimes arise where the rigid requirement of a deposit would prevent just relief. For example, it is obvious that a deposit is impracticable when one claimant to the benefits of life insurance demands one disposition (or option) under the policy and the other claimant demands a very different disposition (or option)." S.Rep.No. 558, at 6.
 
 
 32
 Austin v. Texas-Ohio Gas Co., 218 F. 2d 739 (5th Cir. 1955), which also involved a dispute as to ownership of certain shares of stock, demonstrates to my satisfaction that the filing of a bond does not satisfy the mandate of the statute where specific property is in the possession of the stakeholder. That case clearly holds a stakeholder must deposit the specific property in his possession into the registry of the court in order to obtain jurisdiction.
 
 
 33
 In Austin, ownership of a block of 95,000 shares of stock issued by the Texas-Ohio Gas Company was in controversy. Simultaneously with the filing of its complaint plaintiff tendered into court 23,700 shares of the stock involved, having only this amount in its possession. The jurisdiction of the court was challenged on the ground that plaintiff had not deposited into the registry of the court all of the property in question.
 
 
 34
 The Fifth Circuit carefully analyzed the provisions of Section 1335 in sustaining the court's jurisdiction. Its reasoning, apropos here, is expressed in the following language:
 
 
 35
 "* * * [T]his case can be viewed as an action in the nature of interpleader concerning these 23,700 shares, in which it is alleged that each of the defendants has some claim. It seems the only natural construction, in fact, of 28 U.S.C. § 1335(a) (2) that this is the `property' which it is necessary to deposit in court, in a case such as this involving specific property and not simply a claim for money. * * * When claims for a sum of money only are involved, payment of the entire sum (or giving of a bond) is a condition precedent to the court's jurisdiction. But when claims for specific property are involved, the statute imposes the condition of depositing only the specific property in plaintiff's possession, and the further condition that such property be of the value of $500 or more." 218 F.2d at 744-45. (Emphasis added).
 
 
 36
 Our case of Douglas-Guardian Warehouse Corporation v. Ramey Seed Co., 271 F.2d 24, 26-27 (8th Cir. 1959), relied upon Austin in holding that the tender of specific property into the registry of the court satisfied the jurisdictional requirements of the statute.[3]
 
 
 37
 Professor Moore, in discussing Section 1335, states:
 
 
 38
 "The provision for payment into the registry of the court has been included in each of the interpleader acts since 1917; the provision for the substitution of a bond was introduced into the 1936 Act in order to afford interpleader relief in cases otherwise proper but for the impracticability of a money deposit. Just such a case as visualized by the draftsmen soon arose in Edner v. Massachusetts Mutual Life Insurance Co."
 
 * * * * * *
 
 39
 "A distinction with regard to the amount of deposit has been made between interpleader actions in which the disputed stake is money and those actions in which the stake is personal property. Perhaps the leading case is Austin v. Texas-Ohio Gas Co. There, the claimants asserted interests in 95,000 shares of the corporate stakeholder's stock, many of which shares had been disposed of in a manner which the stakeholder alleged was improper thereby exposing it to various forms of harassment. The stakeholder tendered into court only 23,700 shares of the disputed stock, these being the only shares of the 95,000 which it still had in its possession. The court upheld this partial deposit, as sufficient to meet the jurisdictional requirements of Section 1335, carefully parsing the language of that section to elicit a distinction between the deposit requirement in res cases and in cases of ordinary money debts." [The quotation from Austin, 218 F.2d at 744-46, is omitted]. (Emphasis added).
 
 
 40
 * * * * * *
 
 
 41
 "The court's analysis is sound, and has the support of more recent cases." 3 Moore, Federal Practice ¶ 2210, at 3078, 3083-84 (2d ed. 1966).[4]
 
 
 42
 On the authority of the foregoing cases I am impelled to conclude that the alternative provision for the giving of a bond in the 1936 amendment was designed for situations where the stakeholder is in possession of a fund or other benefits arising from a note, bond, certificate, policy of insurance or other instrument of the value of $500 or more and is under an obligation to pay money to one of the adverse claimants, or where the rigid requirement of a deposit would prevent just relief. Cf. Edner v. Massachusetts Mutual Life Ins. Co., 138 F.2d 327 (3rd Cir. 1943). I do not believe Congress intended to relax the requirement of a deposit of specific property as a prerequisite to jurisdiction where the stakeholder has possession of the specific property and such a deposit is feasible. Neither the bank in its complaint nor the contesting parties in their claims have asserted the existence of any unusual circumstances which would warrant the court in accepting the bond in lieu of a deposit of shares of stock.
 
 
 43
 To me the effect of the majority opinion is to obviate the requirement of a deposit of the specific res in the stakeholder's possession, so long as a bond is given in lieu thereof.
 
 
 44
 I would reverse and remand with directions to dismiss the complaint for lack of jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 Contrary to the majority's intimation Treinies v. Sunshine Mining Co., 99 F.2d 651 (9th Cir. 1939), aff'd, 308 U.S. 66, 72, 60 S.Ct. 44 (1939), does not hold that either the deposit of money or property,or the giving of a bond in lieu thereof, satisfies the condition precedent to obtaining interpleader jurisdiction. In Treinies the provision for filing a bond was not in issue and was not discussed by either the Court of Appeals or the Supreme Court. As in our case the certificates representing the shares of stock were in the possession of one of the claimants and were later deposited into court during the pendency of the action. Jurisdiction, however, was predicated on the fact that accrued dividends, amounting to more than $500, were deposited into court at the time the Sunshine Mining Co. filed its complaint. That corporation did not tender or deposit into court the "shares of stock" in its possession. The Supreme Court upheld jurisdiction on the basis that:
 "There is a real controversy between the adverse claimants. They are brought into the court by the complainant stakeholder who simultaneously deposits the money or property, due and involved in the dispute, into the registry of the court. This was done in this case." 308 U.S. at 72, 66 S.Ct. at 48.
 
 
 [2]
 S.Rep. No. 558, 74th Cong., 1st Sess. (1935)
 
 
 [3]
 InRamey Seed the defendant bank contended that the property tendered into court was not sufficient to satisfy all claims and demands, and consequently the giving of a bond, as required by the district court, was essential. We rejected this contention, and held on the authority of Austin that the only obligation of the stakeholder was to deposit the disputed property in its possession.
 
 
 [4]
 Professor Moore, in support of his conclusion, cites ourRamey Seed case. See also Wertheimer v. Bank of Nova Scotia, 140 F.Supp. 950, 953 (S.D.N.Y.1956).