**GARDES DIRECTIONAL DRILLING**

v.

**U.S. TURNKEY EXPLORATION, INC.**

No. 89–1156–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

March 16, 1993.

Susan C. Severance, Lafayette, LA, for Gardes Directional Drilling.

Paul B. David and Bryan Scofield, Broussard, David & Daigle, Lafayette, LA, L.A.J.F.P. Drilling, Ltd.

Patrick W. Gray, Joseph P. Hebert, Kerry M. Massari, Liskow & Lewis, Lafayette, LA, for Chevron Oil Co., Phillips Petroleum Co., CNG Producing Co., Kerr McGee Corp., Felmont Oil Corp., Cabot Corp., Case–Pomeroy Oil Corp., Sonat Exploration Co., Senior G & A Operating Co. Inc. USA, Chevron U.S.A., Inc. and Cabot Oil & Gas Corp.

Thomas C. Patin, Strain, Dennis, Ellis, Mayhall & Bates, Lafayette, LA, for Baxter Drilling & Exploration Inc.

Douglas Frank Pedigo, Aquila Energy, Omaha, NE, for P S I Inc. of Missouri.

Jennifer L. Davis, Elkins & Yount, Houston, TX, for U.S. Turnkey Exploration Inc.

Leonard K. Knapp, Jr., Office of Leonard K. Knapp, Jr., Lake Charles, LA, for Ace Fishing & Rental Tools Inc.

Henry H. McCreight, Jr., Houston, TX, for American Downhole Ltd. Partnership No. 1.

Henry D.H. Olinde, Jr., Beckner & Assoc., Baton Rouge, LA, for Western Atlas Intern. Inc.

Nathan A. Levy, Jr., St. Martin, Lirette & Shea, Houma, LA, for Coastal Inspection Service, Inc.

Victor A. Ashy, Ashy & Olivier, Lafayette, LA, for Drilling Measurements Inc.

Brad A. Adams, Sessions Fishman Rosenson Boisfontaine & Nathan, New Orleans, LA, for L & L Oil Co. consolidated defendant.

Carl T. Schultz, Green Patterson & Schultz, Houston, TX, for Liquid Drill Inc. and Milchem Inc., Millpark Drilling Fluids, Progress Chemical Sales Co.

Patrick Donavon Gallaugher, Jr., Scofield, Gerard, Veron, Hoskins & Soileau, Lake Charles, LA, for Marine Transp. Services Inc.

Dennis Joseph Vidrine, Jeansonne & Briney, Lafayette, LA, for Oil Field Rental Service Co.

Fanned Seidel, Jr., Lafayette, LA, for Royal Service & Rent.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Several motions are now before the court for its consideration, a Motion for Leave to File Counterclaim filed on behalf of Marine Transportation Services, Inc. ("Marine"), a Motion for Leave to File Counterclaim filed on behalf of Ace Fishing and Rental Tools, Inc. ("Ace"), a Motion to set hearing for Leave to File Complaint/Counterclaim on behalf of Drilling Measurements, Inc. ("Drilling"), and a Motion to Amend answer to complaint, counterclaims, and cross claims filed on behalf of L.A.J.F.P. Drilling, Ltd. ("LAJFP"). In order to rule on these motions, however, this court must determine whether subject matter jurisdiction exists to hear them. Essentially, this court must determine the extent of its jurisdiction to rule on lien claims against a drilling platform formerly located on the Outer Continental Shelf ("OCS") and on claims for wrongful removal and disposal of the platform and related property, once such property was removed from the OCS and transported to Louisiana.

## FACTS AND PROCEDURAL HISTORY

Setting

Kerr-McGee Corporation ("Kerr McGee") and others entered into an oil and gas lease with the United States Department of Interior, Minerals Management Service ("MMS") covering properties located off the coast of Cameron Parish, Louisiana, on the OCS. Production from the lease began diminishing at some point in the late 1980's. Kerr-McGee farmed out the lease to Senior G & A Operating Company, Inc. U.S.A. ("Senior"), which contracted with U.S. Turnkey Exploration, Inc. ("Turnkey") to drill a well on the property. Turnkey contracted, in turn, with several others to provide goods and services in connection with those drilling activities ("service providers"). The well was not successful. Turnkey did not pay many of these service providers, who then sought a lien against the property of Kerr-McGee and others. The lease had expired, however, and there was no production against which the lien might attach. The only properties against which the lien might have attached were certain structures and appurtenances formerly located at East Cameron Block 34 on the OCS that were owned by Kerr-McGee and others (the "East Cameron 34 Owners") (the "Structure"). In 1991, pursuant to order of MMS, the East Cameron 34 Owners contracted with Teledyne Movible Offshore, Inc. to remove the Structure from the lease and salvage it.

The East Cameron 34 Owners contend that the Structure had no net salvage value, and that they incurred substantial expense removing the Structure from the OCS. Contrarily, the lien claimants contend that the Structure had a substantial value, and that the East Cameron 34 Owners are liable to them for this substantial value of the Structure to the extent necessary to satisfy their lien claims against the Structure.

Case # 1—Gardes Directional Drilling v. U.S. Turnkey Exploration

Gardes Directional Drilling ("Gardes") instituted a lawsuit in Louisiana's 38th Judicial District Court in Cameron Parish, Louisiana against Turnkey, Chevron U.S.A., Inc. ("Chevron"), Phillips Petroleum Company ("Phillips"), CNG Producing Company, Kerr-McGee, Felmont Oil Corporation ("Felmont"), Cabot Corporation ("Cabot"), and Case-Pomeroy Oil Corporation ("Case-Pomeroy") (collectively referred to as "defendants" or the "East Cameron 34 Owners") seeking a money judgment and recognition of its lien rights in the Structure which was formerly under lease to defendants. Defendants removed this action to the United States District Court for the Western District of Louisiana on May 23, 1989. Defendants, in their notice of removal, alleged that this court had subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity of citizenship and amount in controversy exceeds $50,000.00). Additionally, defendants alleged that subject matter jurisdiction existed pursuant to 28 U.S.C. § 1331 (federal question), to wit:

## XVI.

The above-described civil action is additionally one which arises out of or in connection with operations conducted on the Outer Continental Shelf which involve exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals. Furthermore, Plaintiff's right to assert a contractual claim and a claim under Louisiana Revised Statutes 9:4861, *et seq.*, against the lease, wells, equipment, production and other items located in or having a situs within federal offshore waters (*i.e.*, in the Outer Continental Shelf area) is a matter arising under the laws of the United States because (a) the laws of the State of Louisiana do not, in and of themselves, apply in federal offshore waters (*i.e.*, in the Outer Continental Shelf area) and (b) Plaintiff is only entitled to a contractual claim and a lien similar to that granted by such Louisiana laws only if such state laws are declared to be the laws of the United States in the Outer Continental Shelf area under Title 43, U.S.C. Section 1333(a)(2)(A). Therefore, this Court has original subject matter jurisdiction under the provisions of Title 43, U.S.C., Section 1349(b)(1) and Title 28, U.S.C., Section 1331, and is one which may be removed to this Court be Petitioners pursuant to the provisions of Title 28 U.S.C., Section 1441(b), without regard to the citizenship of the parties.

### Case #2—L.A.J.F.P. Drilling v. Chevron U.S.A., Inc.

Simultaneously with the above proceedings, LAJFP instituted a lawsuit in Louisiana's 38th Judicial District Court in Cameron Parish, Louisiana against Chevron, Turnkey, Phillips, Kerr–McGee, Felmont, Cabot, Case–Pomeroy, Sonat Exploration Company ("Sonat"), Senior, Baxter Drilling and Exploration, Inc., and PSI, Inc. (collectively referred to as "defendants" or the "East Cameron 34 Owners") seeking recognition of its lien rights in the Structure. Defendants removed this action to the United States District Court for the Western District of Louisiana on July 10, 1989. Defendants, in their notice of removal, alleged that this court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, to wit:

## V.

The above-described civil action is one which arises out of or in connection with operations conducted on the Outer Continental Shelf which involve exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals. Furthermore, Plaintiff's right to assert a claim under Louisiana Revised Statutes 9:4861, *et seq.*, against the lease, wells, equipment, production and other items located in or having a situs within federal offshore waters (*i.e.*, in the Outer Continental Shelf area) is a matter arising under the laws of the United States because (a) the laws of the State of Louisiana do not, in and of themselves, apply in federal offshore waters (*i.e.*, in the Outer Continental Shelf area) and (b) Plaintiff is only entitled to a lien similar to that granted by such Louisiana laws only if such state laws are declared to be the laws of the United States in the Outer Continental Shelf area under 43 U.S.C. § 1333(a)(2)(A). Therefore, this Court has original jurisdiction under the provisions of 43 U.S.C. §§ 1333(a)(2)(A) and 1349(b)(1) and 28 U.S.C. § 1331, and is one which may be removed to this Court by Petitioners pursuant to the provisions of 28 U.S.C. Section 1441(b), without regard to the citizenship of the parties.

### Case #3—Kerr McGee v. L.A.J.F.P. Drilling

While the above lawsuits were pending, Kerr McGee, Chevron, Phillips, Sonat, Felmont, Cabot, and Case–Pomeroy instituted an interpleader action naming LAJFP, Mars Services of Cameron, Inc., Ace, American Downhole Limited Partnership No. 1 ("American"), Western Atlas International, Inc., Aztec Rig Equipment, Inc., Coastal Inspection Service, Inc., Derrick Hammers, Inc., Delta Rental Service, Inc., Drilling. Gardes, L & L Oil Company, Liquid Drill, Inc., Marine, Milchem, Inc. dba Milpark Drilling Fluids, Oil Field Rental Service Co.,

Progress Chemical Sales Co., Royal Service & Rentals, Inc., Turnkey, Blue Jay Expediting, Renee Rocky Russo, Dresser Industries, and Kilgore Towing, Inc. as defendants in interpleader in an effort to have all claims against the Structure resolved in one proceeding.

As the MMS lease had expired, the MMS required the East Cameron 34 Owners to remove the Structure from the OCS. The East Cameron 34 Owners moved to post a cash bond of $42,840.00 in lieu of the Structure so that they could remove the Structure. Judge Richard J. Putnam granted this motion.

Unfortunately, Judge Putnam's order erroneously provided for the release of the Structure from the various lien claims asserted against it. LAJFP alone objected to this order and moved to amend the order. Additionally, LAJFP, claiming that the bond was jurisdictionally insufficient, moved to increase the cash bond submitted by the East Cameron 34 Owners. Judge Edwin F. Hunter amended Judge Putnam's order by deleting the language releasing the Structure from LAJFP's lien claims. Judge Rebecca F. Doherty further amended Judge Putnam's order to properly invoke the court's jurisdiction under the interpleader statute. Judge Doherty directed the East Cameron 34 Owners to post a bond in an amount equal to the largest amount in dispute.

Between the time the East Cameron 34 Owners filed their Motion and Order to Post Cash Bond and the time Judge Putnam's order was amended, they began the removal and disposition of the Structure. The East Cameron 34 Owners continued and completed these operations after the court issued its amended order. Thereafter, the East Cameron 34 Owners, rather than posting a bond for the largest amount in dispute, moved to dismiss the interpleader action. On May 27, 1992, Judge Doherty granted the East Cameron 34 Owners' motion and dismissed the interpleader complaint. Judge Doherty further ordered the return of the East Cameron 34 Owners' cash bond on June 27, 1992.

Before the East Cameron 34 Owners moved to dismiss their interpleader complaint, however, the above named parties filed numerous counterclaims against the plaintiffs and equally numerous cross claims against each other in an apparent legal free-for-all. Among these claims, LAJFP filed various cross complaints against the other lien holders and a compulsory counterclaim against the East Cameron 34 Owners. LAJFP's counterclaims, compulsory under Rule 13 of the Federal Rules of Civil Procedure, arise out of the East Cameron 34 Owners' alleged destruction of LAJFP's lien rights. They involve, among other things, allegations that the East Cameron 34 Owners wrongfully removed and disposed of the Structure from the OCS.

Following the dismissal of the interpleader Judge Doherty filed a minute entry deferring a motion to consolidate to Judge Trimble. Further, Judge Doherty granted a motion to dismiss Ace's cross claims against American.

Consolidation of the Cases

On June 8, 1992, LAJFP moved to consolidate the above actions. On August 4, 1992, Judge James T. Trimble, Jr. consolidated the above cases. Several motions are outstanding: Marine's Motion for Leave to File Counterclaim; Ace's Motion for Leave to File Counterclaim; Drilling's Motion to set hearing for Leave to File Complaint/Counterclaim; and, finally, LAJFP's Motion to Amend Answer to Complaint and Counterclaims and to Cross claims.

## LAW AND ANALYSIS

Counsel for the East Cameron 34 Owners suggest that this court lacks subject matter jurisdiction over counterclaims and other incidental demands filed in the now-dismissed interpleader action. More specifically, the East Cameron 34 Owners argue that this court lacks subject matter jurisdiction because: no federal cause of action exists under 28 U.S.C. § 1331; the East Cameron 34 Owners' voluntary dismissal of the interpleader action likewise dismissed the cross claims and counterclaims filed in the interpleader action; and, even if the incidental actions were not dismissed when the East Cameron 34 Owners voluntarily moved to dismiss the interpleader action this court has

no supplemental jurisdiction under 28 U.S.C. § 1367.

LAJFP responds that this court does indeed have subject matter jurisdiction. LAJFP states that this court has subject matter jurisdiction for several reasons, to wit: a federal question exists under 43 U.S.C. § 1349(b)(1) sufficient to vest this court with original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as interpreted by the Court of Appeals for the Fifth Circuit in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir. 1990); and, their counterclaim is sufficiently related to the claims in the *in rem* lien actions as to vest this court with supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Moreover, LAJFP points out that it was the East Cameron 34 Owners that removed the lien actions to federal court claiming that federal question subject matter jurisdiction exists under 28 U.S.C. § 1331 since this action "arises out of or in connection with operations conducted on the Outer Continental Shelf which involve exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals." The East Cameron 34 Owners represented "that the United States courts, and specifically this Court, thus have exclusive jurisdiction of the claim asserted by [LAJFP] in this action ..."

Counsel for Gardes argues that this court has subject matter jurisdiction for two reasons. First, Gardes suggests that a federal cause of action exists under 28 U.S.C. § 1331. Second, Gardes proposes that this court has jurisdiction under the now-superseded judicial doctrine of pendant jurisdiction.

Counsel for Marine also argues that this court has subject matter jurisdiction over this matter. Marine proposes: that a federal question exists under 43 U.S.C. § 1349(b)(1) sufficient to vest this court with original federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331; that there is diversity in citizenship between the parties such as to vest this court with original diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332; that their counterclaim is

sufficiently related to the claims in the interpleader action as to vest this court with supplemental jurisdiction pursuant to 28 U.S.C. § 1367; and that pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, the East Cameron 34 Owners' unilateral decision to dismiss the interpleader action did not dismiss Marine's counterclaim.

Jurisdiction over the Interpleader and Judge Doherty's Order of Dismissal

The court's analysis will now focus on whether the court ever had subject matter jurisdiction over the interpleader action, whether this court has or ever had subject matter jurisdiction over the incidental demands in the interpleader action, and the effect of Judge Doherty's dismissal of the interpleader action. The East Cameron 34 Owners, plaintiffs in interpleader, filed the interpleader portion of this action under 28 U.S.C. § 1335 to have all claims against the Structure resolved in one proceeding. An examination of 28 U.S.C. § 1335 reveals the function of the requirement of posting a bond in an interpleader action, to wit:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader ... if

... (2) the plaintiff has deposited such money or property or has paid the amount of the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

The deposit of money, property, or a bond with the court is a prerequisite for obtaining jurisdiction over an interpleader action. *In re Sinking of M/V Ukola*, 806 F.2d 1, 5 (1st Cir.1986); *Smith v. Widman*, 627 F.2d 792, 798 (7th Cir.1980); *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287 (8th Cir.1980); and *Life Insurance Company of North America v. Nava*, 667 F.Supp. 279, 280 (E.D.La.1987). According to the provisions of § 1335(a)(2),

money or property deposited in interpleader is to "abide" the "judgment of the court"; similarly, a bond must be of an "amount and with such surety" as would be appropriate in view of the "subject matter of the controversy." *Kitzer v. Phalen Park State Bank of St. Paul,* 379 F.2d 650, 652 (8th Cir.1967). As this court has already held in this matter, a court may not assert jurisdiction over an interpleader action where the money, property, or bond could not suffice to pay the largest amount in controversy. See Report and Recommendations of then Magistrate Trimble filed August 19, 1991 in this action; also see *Metal Transport Co. v. Pacific Venture Steamship Corp.,* 288 F.2d 363, 365 (2d Cir.1961); *New York Life Ins. Co. v. Lee,* 232 F.2d 811, 815 (9th Cir.1956); *Edner v. Massachusetts Mutual Life Ins. Co.,* 138 F.2d 327, 329 (3d Cir.1943); *United Artists Corp. v. Fields Productions, Inc.,* 363 F.Supp. 903, 905 (S.D.N.Y.1973). This court never had subject matter jurisdiction to make any ruling on the merits of the interpleader action.

■ Judge Doherty only dismissed the interpleader action itself. Judge Doherty did not dismiss any other claims. Her Minute Entry deferring the motion to consolidate to Judge Trimble and her Order granting Ace's motion dismissing American evidence her intent. Had Judge Doherty intended to dismiss the entire action when she dismissed the interpleader, she would not have made these post-dismissal filings. Therefore, in light of Judge Doherty's actions, this court holds that Judge Doherty's dismissal of the interpleader action did not dismiss the unresolved claims remaining in that action.

■ Since Judge Doherty did not dismiss the incidental demands in the interpleader action, our analysis must now shift to whether this court has subject matter jurisdiction over these incidental demands. It is generally agreed that if the court has no subject matter jurisdiction over a plaintiff's claim, then it cannot proceed to adjudicate incidental claims over which the court has no independent jurisdictional basis. See 28 U.S.C. § 1367; and *City of Houston v. Standard–Triumph Motor Co.,* 347 F.2d 194 (5th Cir.), cert. denied 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1965). Of course, when the incidental claims present an independent basis of subject matter jurisdiction, the court may adjudicate it as if it were an original claim despite the dismissal of the plaintiff's claim. *Haberman v. Equitable Life Assur. Soc. of U.S.,* 224 F.2d 401 (5th Cir.1955); and *Rengo Co. v. Molin Mach. Co.,* 657 F.2d 535 (3d Cir.), cert. denied 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981).

■ This court never had subject matter jurisdiction to rule on the merits of the interpleader action. This lack of jurisdiction over the interpleader action, however, does not prevent this court from ruling on those incidental claims in the interpleader action that present an independent basis for federal subject matter jurisdiction. Additionally, Judge Doherty's Order of Dismissal dismissed only the interpleader action and did not dismiss the incidental demands in the interpleader action. Thus, this court has subject matter jurisdiction to rule on those incidental demands in the now-dismissed interpleader action that present an independent basis for federal subject matter jurisdiction.

In Rem Claims

The East Cameron 34 Owners do not dispute that the court has subject matter jurisdiction over Gardes' and LAJFP's suits to enforce their *in rem* lien rights. Thus, regardless of the court's ruling on the motions remaining before it, the lien claims of Gardes and LAJFP will remain before the court in a consolidated action. This court has jurisdiction over the *in rem* lien claims.[1]

Federal Question Jurisdiction

■ LAJFP argues that the Fifth Circuit's decision in *Union Texas Petroleum, supra,* sets forth jurisprudence that the Louisiana Oil Well Lien Act ("LOWLA"), La.R.S.

---

1. In *Republic National Bank of Miami v. United States,* —— U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992), the United States Supreme Court considered whether the court of appeals lost jurisdiction to decide an *in rem* forfeiture case after the government removed the forfeited money from the jurisdiction of the court. The Court held that once jurisdiction is established by seizure of the res, the court ordinarily maintains jurisdiction until the litigation ends. *See also Elliott v. M/V Lois B,* 980 F.2d 1001 (5th Cir. 1993).

9:4861, *et seq.* applies pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, since the Structure was located on the OCS off the coast of Louisiana. LAJFP does not address whether MMS' Order directing the East Cameron 34 Owners to remove the platform is inconsistent with LOWLA such as to make LOWLA inapplicable under OCSLA, thus, depriving this court of original subject matter jurisdiction over the counterclaims under 28 U.S.C. § 1331. Gardes presents essentially the same arguments as LAJFP.

The East Cameron 34 Owners counter these arguments with assertions that the counterclaims are based on the fact that the East Cameron 34 Owners removed the Structure from the East Cameron 34 Federal Lease, which was allegedly subject to various lien rights arising from the Federal Lease, then transported it off the OCS into Louisiana, and salvaged it. The East Cameron 34 Owners allege that the only activity on the OCS giving rise to the counterclaims is the removal of the property from the lease. Further, since the East Cameron 34 Owners undertook the removal pursuant to a direct and explicit order issued by the United States Department of Interior, Minerals Management Service, LOWLA is inconsistent with regulations of the Secretary of Interior and is therefore inapplicable under OCSLA. The East Cameron 34 Owners argue that all acts that it undertook following the removal occurred after the Structure was returned to Louisiana and are remediable, if at all, under Louisiana law, which applies of its own force. Accordingly, the East Cameron 34 Owners conclude, these are purely state law claims, these claims are not based upon federal law, and therefore, they cannot be sued upon in federal court under the court's original federal question jurisdiction.

To address this aspect of this jurisdictional quagmire the court returns to *Republic Bank, supra.* While the facts before the Supreme Court in *Republic Bank* are not clearly analogous to the present facts, they are similar enough to provide this court with at least some guidance. The essence of the East Cameron 34 Owners' argument that 28 U.S.C. § 1331 and 43 U.S.C. §§ 1333 and 1349(b)(1) do not apply is that all acts for which the East Cameron 34 Owners might potentially be liable occurred in Louisiana and not on the OCS.

Certainly, if these acts occurred on the OCS this court would have subject matter jurisdiction under 28 U.S.C. § 1331 and 43 U.S.C. §§ 1333 and 1349(b)(1). *Union Texas Petroleum, supra.* Certainly, this court had subject matter jurisdiction over the Structure during the time it was located on the OCS. *Id.* Using as a guide *Republic Bank's* general principle, that jurisdiction, once created, is not divested, although a state of things should arise in which original jurisdiction could not be exercised, this court now holds that it did not lose subject matter jurisdiction by the mere fact that the acts constituting the salvage of the Structure did not occur until after the Structure was removed from the OCS. *See also The Rio Grande,* 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1875).

▪ Stasis is not a general prerequisite to the maintenance of jurisdiction. Jurisdiction over the person survives a change in circumstances, *Leman v. Krentler-Arnold Co.,* 284 U.S. 448, 454, 52 S.Ct. 238, 241, 76 L.Ed. 389 (1932) ("[A]fter a final decree a party cannot defeat the jurisdiction of the appellate tribunal by removing from the jurisdiction, as the proceedings on appeal are part of the cause," citing *Nations v. Johnson,* 65 U.S.C. (24 How.) 195, 16 L.Ed. 628 (1860)), as does jurisdiction over the subject matter, *Louisville, N.A. & C.R. Co. v. Louisville Trust Co.,* 174 U.S. 552, 566, 19 S.Ct. 817, 822, 43 L.Ed. 1081 (1899) (mid-suit change in the citizenship of a party does not destroy diversity jurisdiction); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289–290, 58 S.Ct. 586, 590–591, 82 L.Ed. 845 (1938) (jurisdiction survives reduction of amount in controversy). Nothing in the nature of *in rem* jurisdiction suggests a reason to treat it differently.

This result flows logically from the facts. This court is already intimately familiar with and involved in the complex and convoluted sequence of events that constitute the facts of this case. This court must address the *in rem* lien claims even if it dismisses all of the

other claims remaining in this suit. Retaining jurisdiction over these claims as well as over the *in rem* lien claims achieves the increasingly important goal of judicial economy. It makes no sense for this court to dismiss only part of this four year old lawsuit. The state courts would then have to acquaint themselves with these facts and address issues very closely related to those continuing in the *in rem* lien claims in federal court. Such a partial dismissal would burden both the judicial system and the parties litigant with great delay and cost. Judicial resources are too valuable to squander on such duplicitous proceedings.[2]

Additionally, this court's interest in interpreting its own laws weighs in favor of this court retaining jurisdiction. One of the issues that the parties must argue at trial is whether the East Cameron 34 Owners properly removed the Structure from the OCS. To rule on that issue, the trial court must determine whether the MMS' directive to the East Cameron 34 Owners is inconsistent with LOWLA such as to make LOWLA inapplicable under the Supremacy Clause of the United States Constitution. This determination is best made in a federal forum. The federal court's interest in interpreting the applicability of its own laws is very high. This is an additional inducement for this court to retain jurisdiction over these claims.

Supplemental Jurisdiction

■ This court has original subject matter jurisdiction over the *in rem* lien claims against the Structure. Further, federal courts have supplemental subject matter jurisdiction over claims that are so related to the claims over which the court has original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

The *in rem* lien claimants ask the court to inquire into whether the goods and services they provided were within the meaning of LOWLA, the value of those goods and services, and whether a lien exists. In this case, the court's original subject matter jurisdiction extends over all claims that are so closely related to one another that a plaintiff would ordinarily be expected to litigate them together in one proceeding. As a result of these proceedings, the claimants' rights against the Structure have been impaired to the extent that the Structure no longer exists. All of these claims arise out of Turnkey's failure to pay the lease's service providers. As the Structure no longer exists, this court must determine the remedy due those claimants whose rights have been impaired in order to effectuate its judgment as to those claimants' rights. These claims are all so closely related to one another that a plaintiff would ordinarily be expected to litigate them all in one judicial proceeding.

While the court recognizes that the lien claimants may properly sue on these claims in state court, it also recognizes that Congress designed 28 U.S.C. § 1367 to allow the federal court to hear all of these related claims in the same proceeding in order to avoid judicial duplication and waste. As noted hereinabove, it would be a tremendous waste of judicial time and effort to force the claimants to litigate one portion of their claims in federal court and other portions of their claims in separate state court actions since all of these claims arise out of the same case and controversy. Once again, the policies of judicial economy outweigh the policies of federal deference to state power. This court will not require the claimants to litigate one portion of their claims in federal court and the remaining portions in state court, as all of these claims arise out of the same connected series of events. Accordingly, this court has supplemental subject matter juris-

**2.** See *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *United Mine Workers* raised questions concerning the court's subject matter jurisdiction over pendant state law claims. In *United Mine Workers,* the Supreme Court held that the federal courts continued to have subject matter jurisdiction to rule on state law claims despite the fact that the court dismissed the federal claims upon which the federal court's federal question subject matter jurisdiction was based. The court analyzed the state law claims and found that because they arose from a "common nucleus of operative fact," because the court did not dismiss the federal claims at an early stage of the proceedings, and because the state issues did not predominate the policies of judicial economy outweighed the policies of federal deference to state power.

diction over the claims remaining in the interpleader action.

## CONCLUSION

This court has subject matter jurisdiction to hear the *in rem* lien claims asserted against the Structure as well as all other claims arising out of the drilling operations conducted on the OCS that are related to the Structure and to the lien claims against it. Specifically, this court has jurisdiction to rule on all claims that arise out of Turnkey's failure to pay the lease's service providers; to determine the remedy available to any claimant whose rights have been impaired due to the non-existence of the Structure; as well as to make any other ruling necessary in order to effectuate the judgment of this court.

Both 28 U.S.C. § 1331 and 28 U.S.C. § 1367 provide the basis for this subject matter jurisdiction. Federal question subject matter jurisdiction lies pursuant to 43 U.S.C. §§ 1333 and 1349(b)(1) of OCSLA as interpreted by the Fifth Circuit in *Union Texas Petroleum, supra,* since the Structure was located on the OCS. Supplemental subject matter jurisdiction lies for those claims that are so related to the *in rem* lien claims as to form part of the same case or controversy under Article III of the United States Constitution. Those claims include whether the goods and services provided in relation to the Structure were within the meaning of LOWLA, the value of those goods and services, and whether a lien exists. Additionally, in the event this court determines that the lien claimants or interpleader defendants are entitled to recover damages in their incidental actions, supplemental subject matter jurisdiction lies to determine the recourse available to them to the extent that their recovery is impaired by the nonexistence of the Structure. Accordingly, Marine's Motion for Leave to File Counterclaim will be GRANTED; Ace's Motion for Leave to File Counterclaim will be GRANTED; as to Drilling's Motion to set hearing for Leave to File Complaint/Counterclaim, Drilling will be authorized to file said complaint/counterclaims; and, finally, LAJFP's Motion to Amend answer to complaint, counterclaims, and cross claims will be GRANTED.

## ORDER

After an exhaustive review of the record and for the reasons stated in the Memorandum Ruling of even date;

IT IS ORDERED that Marine Transportation Service, Inc.'s Motion for Leave to File Counterclaim is GRANTED;

IT IS FURTHER ORDERED that Ace Fishing and Rental Tools, Inc.'s Motion for Leave to File Counterclaim is GRANTED;

IT IS FURTHER ORDERED that as to Drilling Measurements, Inc.'s ("Drilling") Motion to set hearing for Leave to File Complaint/Counterclaim, Drilling is hereby authorized to file said complaint/counterclaim; and,

Finally, IT IS ORDERED that L.A.J.F.P. Drilling, Ltd.'s Motion to Amend answer to complaint, counterclaims, and cross claims is GRANTED.